Good morning, Your Honors. May it please the Court, my name is Jordan Stanzler, representing Heinz Investments, and I'm going to take the full 15 minutes. I would like to reserve three minutes for rebuttal. Your Honors, this case deals with companies that specifically design machines to discharge hazardous waste into the environment. They sold these machines and they gave instructions to the operators how to discharge hazardous waste into the environment. So they planned for the discharge of hazardous waste. In that sense, they're arrangers. They intended to have hazardous waste discharged into the environment. They're contributors under RCRA, and they committed common law nuisance under these facts. Mr. Stanzler, do the machines themselves have hazardous substances in them? Your Honor, they start with PCE, which is treated. They're treated and disposed of in the process. So when the machine is originally manufactured, does it have PCE in it, or does it get PCE once it's at the dry cleaner and mixed with something else? Yes. The dry cleaner adds PCE, and then these machines take over. They treat the PCE, and they discharge it in a stream of contaminated water. So when it's manufactured, the machine itself does not have the hazardous substance. Is that correct? Correct, Your Honor. Under a plain reading of the statute, then, which says that a person who either owns or possesses the hazardous substance, how would these machines fall within a plain reading of the statute? If I may answer you this way, Your Honor, we're talking about the arranger part of the statute. And I'm looking at the arranger part. And to give meaning to the statute, one person's an owner, one's an operator, one's an arranger, the defendants say we never touched PCE, we never owned the machines, we didn't use PCE. And the district court's decision, when you boil it all down to it, is the machine companies never possessed PCE. Well, if you have to possess a machine and you have to run a machine, then you're an operator. So that interpretation gives no meaning to arrangement. They've read it out of the statute. Under the statute, doesn't the arranger have to own or possess the hazardous substance? Absolutely not, Your Honor. Case after case has said this, including this court, if I may say, in the Pucutis case, or Capuano in the First Circuit. Let's look at Capuano. A broker didn't own PCE, didn't hazardous waste. He said, dump it over there. It's giving instructions. Capuano never drove a truck. He said, dump your stuff over there. That's the B&R case in the District Court of Washington. But how do you reconcile that with, again, a plain reading of the statute that says any person who, by contract agreement or otherwise, arranged for disposal or treatment, et cetera, of hazardous substances owned or possessed by such person, and such person is the arranger? Your Honor, no, Your Honor. That is not the interpretation that this court has given in the Pucutis case. That is not the interpretation of arrangement in the First Circuit. Those cases have made it crystal clear the arranger does not have to own or possess. If the arranger, if I may ask, answer, Your Honor, if the arranger must own or possess, then arrangement has no meaning under the statute, because an operator must own or possess. An owner must own or possess. And that is the Pucutis case. That's the Capuano case. By the way, that's the Eighth Circuit and the NEPAC case. The arranger does not have to own or possess. And if, indeed, the ruling of this Court is the owner has to, the arranger has to own or possess, arranger has no meaning in that. How could you read the statute otherwise? The courts have said because when you look at the clause, and that's in the Pucutis case here in the Ninth Circuit and the First Circuit in Capuano, you look at the wording of the That is what an arranger does. He arranges, he plans for the disposal of someone else's waste. And that's exactly what happened here. But doesn't the statute say of a hazardous substance owned or possessed by such person referring back to the person who's the arranger? All I can say is, Your Honor, no. That's not how the statute has been read by other courts. And that is not a plain reading of the statute. If you read the statute the way you're suggesting, arranger has no meaning. It's been read out of the statute. You have to be an owner or a possessor of your own waste. But it would still have meaning, wouldn't it? Because the arranger would be transporting hazardous substances to somebody else to dispose of, et cetera. But let's look at the arranger in Capuano case. He was a broker. He didn't arrange anything. He said take those trucks and dump it in that landfill. He didn't run the truck. He didn't own the waste. He just told someone to do it. And that's what we have here. We have instructions. Take that hazardous waste coming out of the machine and put it down the sewer. And we have that multimatic. I mean, they're machines that you must put it down the sewer. It's the instructions to dispose of someone else's waste, the waste created by the machine. It's inherent in the machine. It automatically produces hazardous waste. And these companies say, and here's what  What does arrangement mean that the Supreme Court said? To plan for. It doesn't have to mean to plan for the disposal of your own waste. You're an owner. That's your waste. Your liable's an owner. The arranger arranges for the disposal of someone else's waste. That's been made clear. Where does Burlington Northern case fit in this analysis? Your Honor, Burlington Northern is really distinguishable on its facts. It gives us a little bit of guidance. Remember those facts of difference where a shale oil company made a substance and told people, don't dispose of this hazardous substance. Here we have arrangers saying, do dispose. We're telling you how to dispose of it. Remember the Supreme Court said, what does arrangement mean? To plan for. These companies certainly planned for the disposal of hazardous waste that their machines created. They intended the operators to dispose of hazardous waste. They made arrangements. In the Cooper case, they got a franchise agreement to set up a store. Multimatica saying, the waste is contaminated and you must put it down the sewer. So they are intending, that's Burlington Northern. This is intent, if there ever was. The design itself is a preconceived intent to pollute, to create hazardous waste. And then the instruction goes, you must put the hazardous waste down the sewer. In the case of Multimatica, one of the others, put it in a bucket or down the sewer. They are instructing, just like the broker in Capuano, here's what you do with the hazardous waste. You put it down the sewer. That's arrangement. That's being a contributor under RCRA. You're helping to cause pollution. That's common law nuisance. Common law nuisance, you just need design and instructions. That's what we have here. And the case comes down to this. On all these causes of action, the defendants say, we never owned the hazardous waste and we never ran the machines. And I say to you, if that's a necessary prerequisite, that's wrong as a matter of law. That's the fundamental error of law that underlies all these cases. You don't have to own under nuisance or possess under nuisance. You don't have to own or possess under RCRA. And you don't have to own or possess to be an arranger. So that's the fundamental error that infects every analysis in this case, every legal analysis. It's wrong as a matter of law. And if you read the briefs of the other side, all they basically say is we never possessed the waste and we never ran the machines. You're arguing that these manufacturers had control over the waste? Absolutely, Your Honor, because they designed machines. They can – first of all, just the way these machines function, as we tried to describe in the complaint, you take the hazardous – you take PCE, you use it, okay? Then you go through a process of disposing of it. Talk about the Hoyt sniffer. It's air. This PCE is in the air of the dry cleaner. That smell you smell is PCE in the atmosphere. The Hoyt sniffer takes it out of the air and puts it down the sewer, in the course of which it produces 12 gallons a day of hazardous waste. So it's designed – the whole inherent function, the design is to dispose of hazardous waste, which we call used PCE. That is a hazardous waste. Is control still a relevant factor after the Supreme Court's decision in Burlington? I know it's in the cases from this circuit pre-Burlington. Interesting question. I think it's a factor. It is not dispositive. What is it a factor that – what is it relevant to in the statute? It is intent. It really goes to intent. When you design a machine to create hazardous waste and put it down the sewer, that shows your intent. It shows your control over the process. You are the process. You've made the process. Without this machine, there would be no contamination at all. You have created a machine. We call them a waste disposal machine. That's what the Hoyt sniffer is. Is it ability to control or actual control that's relevant? It's both here on these facts. It's both. They have both ability and actuality. When they design the machine and give instructions, they're doing both. How would ability be relevant to intent? Well, ability standing alone is an abstract concept. But here on to these facts. When you design a machine and give instructions, here's how you run a machine and here's what you do with the hazardous waste, that is actual control. I would say it's also ability to control. But your design itself is making it necessary, inherent, immediate. The minute the machine is turned on and functioned, it's going to create hazardous waste. And we're telling you in our instructions, you must do this to operate. These are very complex machines, by the way. You must do this. It has a whole manual that goes with it, a very complicated manual. And what do you do with 12 gallons of contaminated waste water from the Hoyt sniffer every day? It has to go somewhere. And by the way, I might make this point, when the hazardous waste comes out of the machine, that second, it's in the atmosphere of the store. You have contaminated the atmosphere the very second there's a stream of water comes out because it volatilizes and goes into the atmosphere. That's one reason why you've got the sniffer to take it out of the atmosphere. So these machines are designed to go in the atmosphere. Where does it all go? Where does this contaminated water go? Put it down the sewer or put it into a bucket and then down the sewer. But the second it comes out of that machine, you've contaminated the internal atmosphere of the dry cleaning store. Counsel, Judge Gould, if I could interject one question. Do you think it would be a correct statement of law to say that an arranger has to control or direct or encourage the improper disposal of hazardous waste? Your Honor, I agree with that statement, but I would also add plan for, the words the Supreme Court used, plan for. So if we said control, direct, encourage, or plan for, then how does this case fit in that standard? Well, certainly they planned for the discharge because that's their design of the machine. They intended so. And they controlled it through their design. They control what happens here. It's no different than the brokers, I say, telling dump over here. I created a machine that's going to make hazardous waste. I am controlling. I am making hazardous waste. And I'm telling you how to dispose of the hazardous waste that I'm making for you. So, yes, technically I didn't own the waste. The guy in the store owned it. But I am controlling it, arranging for your disposal. Counsel, you're down to about two minutes. Thank you, Your Honor. I'd like to reserve for my partner. You may do so. Good morning, Your Honor. Eric Grant for Diapolese. I represent RR Street. But I'm going to try to speak to the common issues and reserve three minutes for my colleague from Hoyt Corporation. And who will that be? That will be Mr. Barron. Very well. So I'd like to start where the court started, and that is to emphasize the fundamental facts about all of the equipment in this case. None of the equipment is hazardous waste itself. And at the time of the relevant transactions, namely the sale, and I think for all four of these companies it's the sale of a single piece of equipment over the course of 25 years, that equipment did not contain waste, was not waste and did not contain waste when it came to the plaintiff's tenant. The classic, and then I'd like to go to Your Honor's point about the text of the statute, owned or possessed by such person in paragraph 3 of 9607A. And that interpretation is eminently reasonable and it does not render superfluous paragraph 1, which talks about the owner or operator of a facility. So here in 3 it's talking about ownership or possession of waste. Now I think, I don't know about this First Circuit case from years ago, but what I do know is that this court's cases have talked about the central purpose of a transaction and traditional arranger liability is a transaction in which a defendant attempts to get rid of waste. And that's just not on the undisputed facts on the allegations of the complaint what happened here. These were sales of useful products that were not waste and did not contain waste. Now it is true the complaint alleges that they generated waste, but this court has had long experience with allegations of products that generate waste that later needs to be disposed of. What about the control test, Mr. Grant? Do you think that still applies after Burlington? I don't. I think the Supreme Court said, and this is at page 1880 of the Supreme Court's opinion, in order to qualify as an arranger, the entity must have entered into the sale of its product with the intention that at least a portion of the product be disposed of during the transfer process, during the relevant transaction, which is here the sale. And so the Supreme Court adopted intent or purpose as the touchstone of arranger liability. And that accords with what this court in past cases, Burlington Northern itself, Alco Pacific, Shell Oil, referred to as traditional arranger liability. And that is an entity that has hazardous waste and needs to get rid of it and may ostensibly undertake a transaction that it calls a sale. But the point of that transaction, the purpose of that transaction, is to get rid of waste, to give it to someone else to dispose of. That's not what any of these companies did. They sold a useful product that the plaintiff's tenant here, the operator of the dry cleaning store, disposed of. Now, we heard what I thought was a pretty good jury argument about what happened to the waste here and how things were immediate and inherent. That's not what the complaint alleges. I'd like to refer the court to paragraph 16 of the second amended complaint. That's in volume 2 on page 55 of the excerpts of record in Streets Appeal. And I think that's 1-5-6-0-7. So paragraph 16 of the plaintiff's own complaint. Which page of the ER? Your Honor, that is page 55. All right. And that's paragraph 16. The allegations is that there were other environmentally sound options for disposal of the waste generated by these pieces of equipment. Plaintiff reiterates that allegation on the very next page, page 56, in paragraph 21. The wastewater that contained PCE from the water separator could have been evaporated or aerated, which are environmentally sound options. So on plaintiff's own allegation, there was nothing inherent or necessary or required disposal into the environment for the waste that was generated by this equipment. It's a classic case of a useful product that admittedly generates waste long after the sale and that waste is disposed of by the operator. Was the motion to dismiss the appropriate place to address intent, given how fact intensive that inquiry is? And the Supreme Court has said that in Burlington. Your Honor, it was appropriate here because the essential facts are undisputed. There are a lot of conclusory allegations about intent and design. And I think the phrase waste disposal machine does appear in the, certainly in the briefing. I don't know if it appears in the complaint. But the district court properly refused to credit those conclusory allegations. We made a big deal in our brief that under the Supreme Court's recent decision in Ashcroft versus Iqbal, and even under this court's earlier decision in Gilead Sciences Securities litigation, that those conclusory allegations are not to be credited. What really is to be credited are the actual facts alleged. And that is, in Street's case, that they bought a single Puritan filter. That filter generated waste. And that waste was later disposed of by the operator, not by any of the defendants or their agents. And so I think the district court properly ruled on that, at least in Street's case. And that ruling, that aspect of construing the pleading, was not even challenged in the appellant's opening brief. Counsel, if I could ask one question. Did any of the manufacturers, or Street, if it's the only one you can chat on, did any of them encourage the disposal of waste just into the sewers? Did they encourage disposal of hazardous waste into the sewer system? Your Honor, the short answer is, I believe, no. And there are different allegations with respect to the different equipment manufacturers here. In Street's case, there was an instruction manual that expressly gave the operator the option, one of those environmentally sound options. And the operator chose not to exercise that option. Which one contained the reference to a bucket to dispose the waste into some sort of container? Your Honor, Street's did. But did it go beyond the bucket? Did it instruct what to do with the bucket after the waste had accumulated in the bucket? It did not, Your Honor. And that is a key point, particularly in nuisance, is the California Court of Appeal has required an affirmative instruction to effect an improper disposal. And I think the gravamen of the plaintiff's complaint here is what all of these manufacturers supposedly didn't do. That's on page 41 of Appellant's opening brief in the Hines case in 15607. Really, the complaint is that these manufacturers did not instruct the operator to do the right thing. But that's the California Court of Appeal has made expressly clear, that only affirmative instructions to do the wrong thing give rise to nuisance liability. With the allegation against Multimatic that their manual said to pour it down the drain, would that satisfy that affirmative instruction? And if not, why not? I'm going to defer to my colleague from Multimatic on that point. May it please the Court, Your Honor? You are? Thomas Vandenberg for the Multimatic parties. Very well. The instruction, Your Honor, is to an open drain. It doesn't necessarily require that action to take place, number one, as counsel referenced, the other options. The second point to that is it doesn't intend a release to the environment, it intends a disposal in a drain. But can't an inference be drawn from that if it's down the drain that it's going to go into the environment? Can a reasonable inference be drawn for that? Because remember, we're at the 12B6 stage. Understood, Your Honor. I don't know that that fact in and of itself could draw that inference or another inference. I don't think that you can simply say that one fact leads to another, an inference without additional facts. Thank you. Thank you, counsel. Your Honor, it's Richard Barron on behalf of COIT. With regard to the question relating to the instruction, it's our position that instructions alone are not sufficient to create a ranger liability under CERCLA, and that that would be a broader reading of the statute than was intended by Congress. Whether it's guidance in a manual to collect into a bucket or guidance in a manual to dispose of it down a sewer if no further treatment is necessary either way to address Your Honor's questions, the purpose of putting something to the sewer is to send it to the publicly owned treatment works where it would be treated by the municipality. This is not the same as saying dump it out the back door or dump it in the river. So mere instructions or guidance alone are not sufficient to create a ranger liability. What does it take then? It seems to me that most any product you buy these days contains some sort of instruction. You're not dealing directly with the manufacturer. You're dealing with this piece of paper, and it seems to me you've got to be able to give some credibility to it, that the manufacturer stands behind what he's printed. There would be a difference, Your Honor, between a claim that might sound in products liability for a failure to warn or otherwise than a claim that would sound in nuisance or a claim that would sound under CERCLA. And the difference here is simply if you look at the arranger cases, you have situations where someone is either the guy's sale. They're actually selling something that contains a hazardous substance, such as the lead dross or the styrene from rubber manufacturing that's contaminated. Those types of transactions which, as Your Honor pointed out, this equipment does not contain a hazardous substance. Or you have an alternative situation, Your Honor, where you have someone who's acting as a broker, and their purpose in their business is to coordinate between various companies that have drums of waste and making arrangements for that to go to a landfill or something else, where that's the essential part of the transaction. Here we have one-time sales of equipment over the course of 26 years where a plaintiff has alleged that team enterprises had alternatives that were better to use for disposal of the waste. So instructions alone would not give rise to arranger liability. What about under the nuisance law, which is much broader than arranger liability? Why wouldn't an instruction suffice under the nuisance law? What the court found at the district court level was that the allegations, looking at Twombly and Iqbal, were not sufficient to plead facts. The simple conclusions that it's an improper instruction did not satisfy the district court's review that they should be allowed to withstand a motion to dismiss at this stage. But if they're quoting from the manual, wouldn't that be a sufficiently alleged fact? The quotation from a manual would be a fact, but not sufficient in and of itself to explain why that is an improper allegation. To simply say the manual said X doesn't mean that it's an improper allegation without explaining more in terms of pleading facts as to why that would be the case. Otherwise, in any situation, you could simply quote from some user manual for whatever the piece of equipment was and say, well, something happened bad later on, and therefore we're going to say that's a sufficient fact to let us bring rise to a nuisance claim. Thank you, counsel. Thank you very much. Mr. Stanzler, you have some reserved time. Yes, thank you. Very briefly, Your Honor, reading my complaint where we said there are other environmentally sound methods, the whole point was you didn't choose those. You designed environmentally harmful methods. That's what the complaint is alleging. So on that point, that's the whole point. You meaning the manufacturer.  But ultimately, the customer is going to dispose of the waste, is he not? Of course. And these machines put 12 gallons of hazardous waste in the hands of the operator and said do something with it. Well, we're not going to tell you what. You can either put it in a bucket or down the drain. Down the drain, by the way, is disposal under the environmental laws. They're arguing all their defenses. But disposal into a drain is disposal under CERCLA. Many cases on that point, but I don't want to dwell on that. Why isn't that the operator's responsibility? Of course it's the operator's responsibility. Of course they're liable under CERCLA. But the person who designed the machine and gave instructions is an arranger, is a contributor under RCRA, is contributed to nuisance because they made it all possible. They created the hazardous waste and they put it in the hands of someone else. And their only defense is we didn't touch the hazardous waste. We did everything else. We designed it. We intended it. The minute the stuff came out of the machine, you contaminated the atmosphere. Forget about bucket or drain. It went into the atmosphere. And this was contamination the second the machine was turned on. They created it. Have you alleged that in your complaint, the atmosphere aspect? I think that's something new. Not specifically. Your Honor, you're correct. We put a lot of chemistry in the complaint, but not that one specific one. We tried to explain how you did it. That one point isn't in there. We, of course, amend it. But there's a lot of chemistry. Henry's law is what we would allege. That would explain how PCE gets into the atmosphere, condenses, goes down into the drain or into the cement and into the ground water. We didn't allege that we could upon amendment. How specific do we need to do on chemistry? We thought we were specific enough. We thought our manuals were pretty specific. There's no way of getting around the multimatic manual that says down the drain. Now, must do it. Let me just, useful product. Just because you made a product isn't a defense. This Court has said so in the Burlington Northern case, Ninth Circuit, when the product inherently necessarily causes pollution. That's what we've alleged. We have to say it better and better words. We can say it better and better words on amendment. Mr. Counsel, your time has expired. Thank you very much, Your Honor. The case just argued will be submitted for decision.
judges: St. Eve, O'scannlain, Gould